```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANTHONY ALEX,                       :
                                    :
     Plaintiff                      :
                                    :  CIVIL NO. 1:CV-04-1913
     vs.                            :
                                    :  (Judge Caldwell)
NORTHUMBERLAND COUNTY PRISON        :
et al.,                             :
                                    :
     Defendants                     :
```

*M E M O R A N D U M*

I.  *Introduction*.

Plaintiff, Anthony Alex, served a sentence of three and one-half to twenty-three months in the Northumberland County Prison. He filed this counseled action pursuant to 42 U.S.C. § 1983, alleging that his Fourteenth Amendment right to due process was violated when prison officials refused to allow family members to drive him to and from his work-release job, the job he had before he was incarcerated. The apparent obstacle was a prison rule prohibiting family members from doing the driving except "as a last resort." In part, Plaintiff alleges that the refusal was arbitrary and that, as a consequence, he lost a job that supported his wife and children and had to accept a work-release job that paid half as much with far fewer benefits than his old job. Plaintiff also makes a Thirteenth Amendment claim that the

inferior work-release job was involuntary servitude.  Finally, he makes a state-law claim under 42 Pa. C.S. § 8550.

Named as defendants are: the Northumberland County Prison; Northumberland County Adult Probation and Parole; Northumberland County; Mary Carpenter, Work Release Coordinator within the Northumberland County Prison; and John Conrad, Deputy Warden of the Northumberland County Prison.

We are considering two motions to dismiss, one filed by Northumberland County Prison and defendants Carpenter and Conrad, and the other by Northumberland County Adult Probation and Parole and Northumberland County.  Both motions principally argue that Plaintiff has failed to state a due-process claim upon which relief can be granted because he does not have a protected liberty interest in work release.  For the reasons that follow, we will grant the defendants' motions and dismiss the complaint.

II.     *Background.*

The complaint alleges the following.  On August 28, 2002, Plaintiff was sentenced in the Northumberland County Court of Common Pleas to three and one-half to twenty-three months' incarceration.  Alex's sentence was to commence on Monday, September 2, 2002.  (Doc. 1, Compl.; Doc. 15, Defendants Northumberland County Adult Probation and Parole and Northumberland County's Motion to Dismiss, Ex. B, sentencing

order).  In the sentencing order, the court also granted Alex "immediate work release provided the Defendant can comply with all conditions and restrictions as may be imposed by the Northumberland County Probation Department and the Northumberland County Prison."  (Doc. 15, Ex. B).

At the time of his incarceration, Alex already had a job.  He supported his wife and three children by working at BRT & Company ("BRT"), in Marysville, Pennsylvania.  In his various capacities as a driver, supervisor and dispatcher, he earned $15.00 per hour and received paid benefits.  (Doc. 1).

On Wednesday, August 28, 2002, Alex telephoned Mary Carpenter, the Work Release Coordinator at the Northumberland County Prison, to arrange his work release schedule.  He informed Carpenter "that it was his plan to have his wife or mother-in-law transport him" between the prison and BRT each day.  (*Id.*)  Carpenter advised him that neither his wife nor his mother-in-law was permitted to transport him for work-release purposes "and that he could not work at [BRT] during his work release due to work-release policies governing transportation to and from the work site."  (*Id.*)  That day Alex quit his job after advising BRT that he would not be able to work there during his incarceration.  (*Id.*)

Upon beginning his sentence on September 2, 2002, Alex learned that the prison's established transportation policy for

work-release inmates stated (somewhat inartfully) that "No spouses will transport inmates, Ie; wives, husbands, fiances, girlfriends; only as a last resort.  Other relatives will be used on a limited basis also only as a last resort." (Doc. 1, Ex. A).  He again requested that defendant Brennan comply with the policy but she refused.  As a result, he lost his job with BRT.  On September 26, 2002, Alex was placed on work release after accepting employment with Sunray Cheese where he earned $7.50 an hour and received fewer benefits than at BRT.  (Doc. 1).

III.   *Standard of Review.*

In rendering a decision on a motion to dismiss, the Court must accept the Plaintiff's allegations as true.  *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d. Cir. 2004).  A motion to dismiss may only be granted if there is no reasonable reading of the facts that would entitle Plaintiff to relief.  *Lum v. Bank of America*, 361 F. 3d 217, 223 (3d Cir. 2004).  A complaint that does not establish entitlement to relief under any reasonable interpretation is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir.2002).

Generally, the court may not consider documents outside of the pleadings when ruling on a motion to dismiss.  *Lum*, 361 F.3d at 222 n. 3 (citing *In re Burlington Coat Factory Securities*

*Litigation,* 114 F.3d 1410, 1426 (3d Cir.1997)). However, the court may rely on documents which plaintiff has attached to or submitted with the complaint and any documents "integral to or explicitly relied upon in the complaint." (*Id*.) The court may consider such documents without converting the motion to dismiss into one for summary judgment. *See Spruill*, 372 F.3d at 223. Thus, in the instant case, we will consider the sentencing order, although Alex did not attach it to the Complaint because he refers to it in his complaint and relies upon it in making his claims.

IV.     *Discussion*.

    A. *The Due Process Claim*.

"A due process claim is cognizable only if there is a recognized liberty or property interest at stake." *Coakley v. Murphy*, 884 F.2d 1218, 1220 (9th Cir. 1989). A protected liberty interest may be created by either the Due Process Clause itself or by state law. *Asquith v. Dep't of Corr.*, 186 F.3d 407, 409 (3d Cir. 1999).

In moving to dismiss the due-process claim, Defendants point out that prisoners have no Fourteenth Amendment liberty or property interest in prison employment, participation in a work release program or a particular prison wage. *See Bryan v. Verner*, 516 F.2d 233, 240 (3d Cir. 1975)(inmate's expectation of keeping a particular job is not a property interest); *Callender v. Sioux*

-5-

*City Residential Treatment Facility*, 88 F.3d 666 (8th Cir. 1996)(prisoner has no liberty interest in remaining in a work-release program); *Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989)(no property interest in continuing in work-release program under Fourteenth Amendment); *McGoue v. Janecka*, 211 F. Supp. 2d 627 (E.D. Pa. 2002)(same).

Plaintiff acknowledges this but argues his case is different because: (1) it was a pre-existing job; (2) his right to work release was established by court order, specifically, the sentencing order allowing him into the work-release program; and (3) the prison's own work-release rules permitted family members to transport him.

We reject Plaintiff's position. A state law or regulation can give rise to a liberty interest protected by the Due Process Clause. However, in the prison context, a liberty interest can only be recognized if the defendants' actions imposed a "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418, 430 (1995). The Third Circuit in *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1977), found that "the baseline for determining what is 'atypical and significant' the 'ordinary incidents of prison life'-is ascertained by what a sentenced inmate may reasonably expect to

-6-

encounter as a result of his or her conviction in accordance with due process of law."

Applying this standard to the prison's transportation policy for work-release inmates (Doc. 1, Exhibit A), we do not find that this policy creates a liberty interest in immediate work release to one's pre-incarceration employer.  Nor does this policy of allowing relatives to transport work-release inmates "as a last resort" impose on Alex an "atypical and significant hardship in relation to the ordinary incidents of prison life."  Alex was subject to incarceration regardless of his participation in the work-release program.  The outcome of the Work Release Coordinator's not accepting Alex's proposed transportation arrangements to BRT did not alter his status as a convict or his conditions of confinement.  That Alex's employment with BRT may have been more profitable or satisfying to him than his job at Sunray Cheese is irrelevant to our discussion.  Neither this distinction nor the denial of immediate participation in the work-release program created an "atypical and significant hardship in relation to the ordinary incidents of prison life."  "*Sandin* does not permit [a comparison of] the prisoner's own life before and after the alleged deprivation.  Rather, . . . the prisoner's liberties after the alleged deprivation [must be compared] with the normal incidents of prison life."  *Asquith, supra,* 186 F.3d at 412.  We do not find it atypical that recently committed prisoners

are denied immediate permission to leave jail in order to work. Thus, Alex's denial of immediate work release is not "atypical."

Plaintiff's reliance on the sentencing order is also misplaced. Contrary to Plaintiff's representations, the court order did not direct Alex's immediate participation in work release or guarantee his continued employment with BRT while incarcerated. It merely allowed him work release provided he complied with all the conditions and restrictions that may have been imposed by the Northumberland County Probation Department and the Northumberland County Prison. The parties agree that the defendants' discretion in administering the Northumberland Prison Work Study Program is "quite broad." (Doc. 18, Plaintiff's Opposition Brief). The sentencing order adds no weight to the due-process claim. *Carter v. McCaleb*, 29 F. Supp.2d 423, 428-29 (W.D. Mich. 1998).

Neither does the fact that Plaintiff already had the job. As noted, in *Asquith, supra,* the Third Circuit stated the comparison is not to the prisoner's life before and after the alleged deprivation but a comparison between the prisoner's liberties after the deprivation and the normal incidents of prison life. 186 F.3d at 412. In this light, Plaintiff suffered no hardship since after the refusal of work release he encountered only the normal incidents of prison life. We also note that in *Asquith* the Third Circuit cited with approval *Dominique v. Weld*,

73 F.3d 1156, 1159-60 (1st Cir. 1996), where the First Circuit rejected a due-process claim when the inmate was already in the work-release program when he was removed from it.

B. *The Thirteenth Amendment Claim*.

Plaintiff asserts that when he was forced to accept the inferior work-release job, his Thirteenth Amendment right against involuntary servitude was violated. We disagree. There was no forcible compulsion to take this job, a necessary element of a Thirteenth Amendment claim. *See United States v. Kozminski*, 487 U.S. 931, 942, 108 S.Ct. 2751, 101 L.Ed.2d 788, 804 (1988).

C. *The State-Law Claim.*

Plaintiff has made a state-law claim under Pennsylvania's Political Subdivision Tort Claim Act ("PSTCA"), 42 Pa. C. S. §§ 8542 and 8550 alleging defendants committed willful and malicious misconduct, based upon their alleged failure to comply with the sentencing order.

Defendants argue that if we have decided to dismiss the federal claims, we should decline to exercise supplemental jurisdiction over the state-law claims and dismiss them without prejudice. Plaintiff requests that if we dismiss the federal claims, we remand this case to state court. We cannot remand as Plaintiff initiated this matter in federal court, and Plaintiff provides us with no authority that would enable us to transfer the

case to the appropriate state court.  Nor should we dismiss the state-law claim as Alex might confront a limitations issue if he refiles the claim in state court.[1]  Thus, we should address Alex's state-law claim.

The PSTCA grants broad immunity to local governments and their employees for tort suits.  *See* 42 Pa. C.A. § 8541.[2] Individual employees (defendants) are also immune under the PSTCA to the same degree as Northumberland County for actions taken within the scope of their employment duties.  *See* 42 Pa. C.S. § 8545.  However, the PTSCA allows "for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice, or willful misconduct."  *See* 42 Pa. C. S. § 8550.[3]  "Willful

---

[1] Alex appears to have filed this action one day before the expiration of the statute of limitations on his federal and state claims.  Pennsylvania has a two-year statute of limitations for personal injury actions, *see* 42 Pa. C.S. § 5524, and the state statute of limitations for personal injury actions is applied to section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 275, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).  Thus, the statute of limitations would probably bar any new action filed in state court.

[2] Eight exceptions to § 8541 exist to this general grant of immunity: (1) the operation of motor vehicles; (2) the care, custody and control of personal property; (3) the care, custody, and control of real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) the care, custody and control of animals.  *See* 42 Pa. C.S. §§ 8542(b)(1)-(8).

[3] This section "only abolishes immunity for willful misconduct which pertains to local agency employees and does not

misconduct" under the PSTCA is synonymous with "intentional tort." *Roskos v. Sugarloaf Township,* 295 F. Supp. 2d 480, 492 (M.D. Pa. 2003); *Brown v. Muhlenberg Township*, 269 F.3d 205, 214 (3d Cir. 2001).  Pennsylvania law interprets this as meaning "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied."  *Roskos,* 295 F. Supp. 2d at 492 (*citing King*, 115 Pa. Commw. at 366-367, 540 A.2d at 981).  In our view, the plaintiff must also allege an intentional tort, *see Illiano v. Clay Township*, 892 F. Supp. 117, 121-22 (E.D. Pa. 1995), not simply complain that the defendants' actions were intentional and that the plaintiff was injured by them.

In this case, Alex argues Carpenter and Conrad forfeited their official immunity by committing acts of willful misconduct. Alex bases his allegations on "[d]efendants' behavior and treatment of him contrary to the clear direction" of the sentencing judge (doc. 18) and their failure "to follow its own clear applicable policies" (doc. 1).  We do not agree.  As previously noted, the sentencing judge did not mandate Alex's participation in the prison's work-release program, let alone, his continued employment at BRT.  Instead, he conditioned Plaintiff's

---

affect the immunities of local agencies."  *King v. Breach*, 115 Pa. Commw. 355, 262, 540 A.2d 976, 979 (1988).  Accordingly, Alex's state-law claims against the County and the non-individual defendants are barred.

participation on compliance with all conditions and restrictions as may be imposed by the Probation Department and the Prison. Further, Plaintiff has not alleged that the individual defendants' conduct amounted to an intentional tort.

    We will issue an appropriate order.

                                        /s/William W. Caldwell
                                        William W. Caldwell
                                        United States District Judge=

Date: September 22, 2005

```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

ANTHONY ALEX,                       :
                                    :
    Plaintiff                       :
                                    :   CIVIL NO. 1:CV-04-1913
    vs.                             :
                                    :   (Judge Caldwell)
NORTHUMBERLAND COUNTY PRISON        :
*et al.*,                           :
                                    :
    Defendants                      :

*O R D E R*

AND NOW, this 22nd day of September, 2005, for the reasons set forth in the accompanying Memorandum, IT IS ORDERED THAT:

    1.    Defendants' Motions to Dismiss (docs. 3 and 15) are GRANTED.

    2.    The Complaint is DISMISSED for failure to state a claim for which relief can be granted.

    3.    The Clerk of Court shall close this file.

    /s/William W. Caldwell
    William W. Caldwell
    United States District Judge